UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JERRY LEWIS SEWARD,

      Plaintiff,

v.                     Case No: 2:14-cv-356-FtM-29MRM

WEXFORD HEALTH SOURCE,
THOMAS REID, Warden, RONALD
S. KAMNIK, ROBERT HEMPHILL,
M.D., and ARTHUR MOON,
S.H.S.A.,

      Defendants.

_____

**ORDER AND OPINION**

This matter comes before the Court upon review of defendant, Wexford Health Source's Motion for Summary Judgment (Doc. #30) filed on July 17, 2015. Also before the Court is defendants, Dr. Robert Hemphill and Arthur Moon's, Motion for Summary Judgment (Doc. #65) filed on January 14, 2016. In response, plaintiff filed a Motion to Deny Defendants Motion for Summary Judgment and Grant the Plaintiff Summary Judgment (Doc. #73). These matters are ripe for review.

**I.**

Plaintiff, Jerry Lewis Seward, initiated this action by filing a *pro se* Civil Rights Complaint Form (Doc. #1) on June 26, 2014. Plaintiff was granted leave to amend and filed an Amended Complaint (Doc. #12) which is now the operative pleading in this

case.  Attached to the Amended Complaint are Informed Consent for Psychotropic Medication forms and inmate grievance forms plaintiff submitted to various correctional officials.  (Doc. #12-1.)

Plaintiff's claims allege two instances in which the plaintiff's psychotropic prescription medication regimen was altered without his consent.  The Amended Complaint identifies the following defendants: Wexford Health Source, Ronald Kamnik, Robert Hemphill, Arthur Moon, and Thomas Reid.  Liberally construed, the Amended Complaint sets forth claims of deliberate indifference under the Eighth Amendment and violations of plaintiff's right to bodily integrity under the Fourteenth Amendment.

Defendants Wexford, Hemphill and Moon (collectively "defendants") filed motions for summary judgment asserting: (1) the undisputed record shows that that defendants were not deliberately indifferent plaintiff's Eighth Amendment claim (Doc. #30, ¶ 6; Doc. #65, ¶ 8); (2) Plaintiff's Fourteenth Amendment claim fails because plaintiff was an incarcerated inmate at the time of the events in question and thus subject to the Eighth Amendment (Doc. #30, ¶ 7; Doc. #65, ¶ 9); and (3) even if plaintiff could establish sufficient evidence a constitutional violation occurred, defendant Wexford cannot be liable because there is no evidence of policy, practice or custom that led to the violation (Doc. #30, ¶ 8).  Defendants provide the following exhibits under seal in support of their summary judgment motions: Florida

Department of Corrections Individualized Service Plan (Doc. #30-1); Psychiatric Follow-up Notes (Doc. #30-2); Medication and Treatment Records (Doc. #30-3); Physician's Order Sheet (Doc. #30-4); Inmate Request Forms (Docs. #30-5, #30-6, #30-7, #65-8, #65-9, #65-11); Affidavit of Arthur Moon (Doc. #65-10); Request for Administrative Remedy or Appeal Forms (Docs. #65-12; #65-15); Responses to Appeals Requests (Docs. #65-13; #65-16); Affidavit of Robert Hemphill (Doc. #65-14).

Plaintiff opposes defendants' motions and seeks summary judgment in his favor.[1]  (Doc. #73.)  Plaintiff provides the following exhibits in support of his motion: Request and Grievance Forms; Copies of Policy and Procedures; and Physician Order Sheets. (Docs. #73-1, #73-2, #73-3, #73-4.)

Defendants respond that that they had no knowledge or direct involvement in prescribing or dispensing the medications to

---

[1] Defendants Wexford Health Source, Robert Hemphill and Arthur Moon have filed motions for Summary Judgment (Docs. #30, #65). Plaintiff filed a response to defendants' motions for summary judgment and also moves for summary judgment against all defendants.  (Doc. #73.)  A review of the docket shows that defendant Reid has a pending Motion to Dismiss (Doc. #71). Moreover, defendant Dr. Kamnik remains unserved and the Court has not yet entered a Case Management and Scheduling Order.  Due to the procedural posture of the case, the Court finds that plaintiff's Motion for Summary Judgment as to defendants Reid and Kamnik is premature.  Accordingly, to the extent plaintiff seeks summary judgment against defendants Reid or Kamnik, the motion is denied as premature.  Consequently, defendant Thomas Reid's Motion for Enlargement of Time (Doc. #74) is denied as moot.

plaintiff.   (Doc. #75.)   Defendants also assert that there is no supervisory liability and no policy, practice, or custom that lead to the alleged violations.   (Id.)

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).   A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).   However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."

St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198
F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp.
Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding
summary judgment "may be inappropriate even where the parties agree
on the basic facts, but disagree about the factual inferences that
should be drawn from these facts")).  "If a reasonable fact finder
evaluating the evidence could draw more than one inference from
the facts, and if that inference introduces a genuine issue of
material fact, then the court should not grant summary judgment."
Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

**A.  The Amended Complaint**

Plaintiff alleges that the defendants violated his Eighth and
Fourteenth Amendment rights by substituting his psychotropic
medication twice without his consent.  According to plaintiff, no
psychotropic medication can be prescribed, ordered, and dispensed
without his signed consent.  (Doc. #12, p. 6.)  Plaintiff claims
that before signing the consent form he must be counseled on the
medications potential side effects, alternative treatment,
approximate length of care, and risk and hazards.  (Id.)  Plaintiff
alleges he told Dr. Kamnik that he did not consent to him changing
his medication without his knowledge.  (Id.)  Plaintiff alleges he
was dispensed pills that were different from the Artane tablets he
was prescribed.  (Id.)  When he inquired what the pills were, the

nurse told him they were Meluene (Syrillion) the doctor has prescribed. (Id.) Plaintiff took the pills pursuant to the "single dose policy". (Id. at p. 7.) Then on July 16, 2013, plaintiff's medication was changed from Meluene to Amantadine. (Id.) Plaintiff did not want to take the new medication but was compelled to take the medication by an administrative rule. (Id.) Plaintiff asked the nurse how to stop the medications and she told him to write a DC6-236 form requesting that the medication be discontinued. (Id. at p. 8.) On July 19, 2013, plaintiff wrote a request to Dr. Kamnik about the change in medication. (Id.) Dr. Kamnik responded stating the Artane is no longer available but a substitute "Meluene" was provided as discussed on July 16. (Id.) According to plaintiff, he never discussed receiving Meluene and never signed an informal Consent Form DC4-545 to be prescribed and dispended Meluene. (Id.) Plaintiff also learned that Dr. Kamnik prescribed him Amantadine without his written consent. (Id.) On August 1, 2013, plaintiff filed an informal grievance form with the Chief Health Officer defendant Hemphill about the alteration in his medication. (Id. at p. 9.) He received a response that all psychotropic medications would be discontinued immediately per his request. (Id.)

Plaintiff alleges he filed another DC6-236 form on August 6, 2013 explaining his symptoms and that he "had spoke[n] to doctor Kamnik on 7-16-13 and that he did not trust him." (Id. p. 10.)

6

Plaintiff states he did not give written or verbal consent to take Meluene or Amantadine.  (Id. p. 11.)  Plaintiff alleges he took the medications from July 16, 2013 through September 5, 2013 for approximately twenty-one (21) days.  (Id. p. 12.)  Plaintiff claims the medications were forced on him against his will by the single dose policy which compels plaintiff to take the medication at the window in view of the nurse and officer or receive a disciplinary report and be confined.  (Id. at p. 13.)  Plaintiff took the medications because did not want to go to confinement. (Id.)  Plaintiff stopped taking the medication due to the extreme discomforts the medication was causing him.  (Id. at p. 7.)

## B. Undisputed Facts

While plaintiff was serving out his sentence at Charlotte Correctional Institution (CCI), he was offered regular mental health treatment administered by defendant Wexford.  Plaintiff was prescribed a regular treatment of psychotropic medication (Doc. #30-3.)  Plaintiff was originally prescribed Paxil, Haldol, and Artane.  (Id.)  However, on July 16, 2013, Dr. Kamnik ordered plaintiff to be tapered off Artane and started on Amantadine, another prescription medication, following the Artane taper. (Doc. #30-4.)

Starting July 18, 2013, plaintiff's Artane prescription was tapered to once a day dispensation pursuant to Dr. Kamnik's July 16, 2013 order.  (Doc. #30-3.)  From July 18, 2013 through July

30, 2013, plaintiff received a single daily dose of Artane instead of his regular twice a day dosage. (Id.) Plaintiff submitted an Inmate Request form to Dr. Kamnik on July 19, 2013, complaining about the decrease in his medication. (Doc. 30-5.) On July 24, 2013, Dr. Kamnik responded to plaintiff's Inmate Request informing plaintiff that On July 16, 2013, plaintiff was made aware that Artane was no longer in the formulary but that a substitute medicine was being provided. (Id.)

On July 30, 2013, plaintiff began receiving Amantadine. (Id.) On August 1, 2013, plaintiff submitted an informal grievance to the Chief Officer of Mental Health asking why he was prescribed Syrillion[2] for side effects of the Haldol and Paxil without his request or approval. (Doc. #30-6.) There is no record of plaintiff being prescribed Syrillion. Plaintiff requested that all psychotropic medications be stopped. (Id.) Pursuant to this request, all psychotropic medications were stopped on August 5, 2013. (Id.; Doc. #30-3.) Plaintiff received the Amantadine from July 31, 2013 until August 5, 2013 when all medications were stopped at his request.

On August 6, 2013, plaintiff submitted another informal grievance to the Chief Medical Officer of Mental Health claiming

---

[2] Defendants allege there is no such drug called Syrillion and plaintiff's only medication change during this time period was from Artane to Amantadine. (Doc. #30, p. 4; Doc. #65, p. 5.)

he was taking a new medication called Meluene[3]. (Doc. #30-7.) Plaintiff stated that he never signed a consent form for the new medication and demanded to know who ordered the switch. (Id.) In response, defendant Moon informed plaintiff that all of his medication had been stopped per his request and that he had a follow up appointment with a psychiatrist to discuss. (Id.)

On August 12, 2013, plaintiff submitted another grievance directly to defendant Moon. (Doc. #65-8.) In the grievance, plaintiff states that he is aware that his medications were discontinued and demands to know who authorized the nurse to dispense, and who prescribed the medication "Meluene" without his consent. (Id.) Defendant Moon responded that there was no reference to a medication named Meluene and that plaintiff had signed an informed consent for all of his psychotropic medications ordered. (Id.) On August 24, 2013, plaintiff submitted another grievance to defendant Moon. (Doc. #65-9.) In the grievance, plaintiff alleges that he had been given Amatadine without his consent that it gave him various unpleasant psychological symptoms. (Id.) In his response, defendant Moon asserts that plaintiff was scheduled to start Amantadine after he completed another medication but that the order had been cancelled before

---

[3] Defendants allege there is no such drug called Meluene and plaintiff's only medication change during this time period was from Artane to Amantadine.

the plaintiff started the medication. (Id.) Plaintiff submitted another grievance to defendant Wexford on the same date. (Doc. #65-11.) Defendant Moon responded to that grievance as well directing plaintiff's attention to his response to the other August 24, 2013 grievance. (Id.)

On October 16, 2013, plaintiff submitted a grievance to the Warden. (Doc. #65-12.) Defendant Hemphill responded stating that the medication Amantadine was prescribed to be taken after plaintiff finished his Artane, but was never dispensed. (Doc. #65-13.) On November 5, 2013, plaintiff submitted another grievance to the Warden. (Doc. #65-14.) Defendant Hemphill responded to the grievance informing plaintiff that he had been prescribed Amandtadine to be started upon the conclusion of the Artane taper. (Doc. #65-15.) Defendant clarified that plaintiff received this medication for one week before it was cancelled on August 5, 2013, and the records review at the time of plaintiff's initial grievances were incorrectly interpreted. (Id.)

**IV.**

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff

10

must establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh v. Butler Cty.</u>, 268 F.3d 1014, 1059 (11th Cir. 2001); <u>Swint v. City of Wadley</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson Cty. Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

**A. Eighth Amendment**

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a plaintiff's health or safety. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 (1976). To establish an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must prove: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. <u>Youmans v. Gagnon</u>, 626 F.3d 557, 563 (11th Cir. 2010). In order to establish deliberate indifference to a serious medical need on the part of a defendant, a plaintiff must show subjective knowledge of a risk of serious harm and disregard of that risk by conduct that is more than gross negligence. <u>Townsend v. Jefferson Cty.</u>, 601 F.3d 1152, 1158 (11th Cir. 2010).

"A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." <u>Whitehead v. Burnside</u>, 403 F. App'x 401, 403 (11th Cir. 2010) (citing <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1504-05 (11th Cir. 1991)). A doctor's decision about the type of medicine that

should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference.  [ ] Nor does a simple difference in medical opinion."). "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Pet. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). Consequently, "[d]eliberate indifference is not established where an inmate received care but desired different modes of treatment." Id. at 964.

### 1. Defendant Wexford Health Source

Plaintiff alleges defendant Wexford violated his Eighth Amendment right because its employees caused him injury, pain, and irreversible suffering due to the improper health care delivery system. (Doc. #12 ¶ 20.) Plaintiff claims Wexford's employees or agents were acting in accord with an official policy practice or custom and that it was the moving force behind plaintiff's constitutional violation. (Doc. #73, p. 4.) Defendant Wexford asserts that there is no evidence that it engaged in conduct that rose to the level of deliberate indifference and thus, it is

entitled to summary judgment. (Doc. #30, p. 9-10.) Defendant Wexford also alleges there is no policy, practice, and/or custom that led to a violation of plaintiff's constitutional rights. (Id. at p. 12.)

Defendant Wexford is not a governmental entity, but a private corporation that provides health care to inmates. "Where a function which is traditionally the exclusive prerogative of the state [ ] is performed by a private entity," that private entity, like a municipality, may be held liable under § 1983. Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985). To prevail on a Section 1983 claim against a municipality, "a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a policy or custom that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Whittington v. Town of Surfside, 269 F. App'x 918, 921 (11th Cir. 2008). Under Monell, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Goebert v. Lee County, 510 F.3d 1312, 1332 (11th Cir. 2007) (citing Sewell v. Town of Lake Hamilton, 117 F.3d

488, 489 (11th Cir. 1997)). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." Goebert, 510 F.3d at 1332 (citing St. Louis v. Praprotnik, 485 U.S. 112, 127 (1998)). Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." Depew v. St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986).

Nothing in the record suggests Wexford, as the result of a custom or policy, was deliberately indifferent to plaintiff's medical needs. Specifically, plaintiff's allegations that "several inmates have died due to the administration's failure to deliver a better health care system" (Doc. #12, ¶ 84), and "the administration is in the news because there are several serious problem occurring daily" (id. ¶ 86) are wholly conclusory and insufficient to establish a "custom or policy." Furthermore, there is no evidence in the record that Wexford had a custom or policy of substituting inmates' medications without their consent. The Complaint alleges only that plaintiff's medications were altered without his consent, showing it was an isolated incident and not the result of a persistent and widespread practice.

To the extent plaintiff alleges defendant Wexford violated Department of Corrections Procedures, such argument does not implicate a constitutional issue. Violations of agency regulations do not raise constitutional questions. Even if

regulations were not followed, prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." Sandin v. Conner, 515 U.S. 472, 481-82 (1995). The adoption of procedural guidelines does not automatically give rise to a liberty interest; thus, the failure to follow a prison directive or regulation does not give rise to a federal claim if constitutional minima are met. See Sharma v. DEA, 511 F. App'x 898 (11th Cir. 2013); United States v. Caceres, 440 U.S. 741, 751-52 (1979) (mere violations of agency regulations do not raise constitutional questions). Accordingly, plaintiff's allegations regarding defendant Wexford's violations of Department of Correction Procedures do not fall within the scope of his § 1983 claim.

**2. Defendant Hemphill**

Plaintiff alleges defendant Hemphill was deliberately indifferent to his medical needs and to his responsibilities as the Chief Health Officer. (Doc. #12, p. 18.) Specifically, plaintiff alleges that defendant Hemphill failed to exercise his clinical judgment on medical issues concerning inmates and authority to develop systems and processes including quality review and quality management initiatives to deliver health care services. (Id.) Plaintiff asserts defendant Hemphill did not offer help in correcting an improper medical department despite plaintiff's numerous grievances. (Id. at p. 19.) Plaintiff

contends that he would not have been prescribed and dispensed improper medications for several days had defendant Hemphill's health care delivery system not been a failure. (Id.)

Defendants assert that defendant Hemphill had no involvement or participation in ordering, prescribing, or dispensing plaintiff's medications, and defendant Hemphill's responses to plaintiff's grievances are not a basis of deliberate indifference claim (Doc. #65, p. 12-13.)

A defendant cannot be held liable under § 1983 based solely on the theory of *respondeat superior* or vicarious liability. Hyland v. Kolhage, 267 F. App'x 836, 841 (11th Cir. 2008); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Supervisory liability can be established only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotations omitted). When determining whether there is a causal connection between a defendant's action and the alleged deprivation of a constitutional right, mere knowledge of a potential deprivation is not sufficient to impose liability on a supervisor. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Rather, in order to state a claim against the supervisor, the plaintiff must allege purposeful

action by the supervisor to deprive plaintiff of a constitutional right.  Id.

The Amended Complaint contains no factual allegations suggesting that defendant Hemphill was personally involved in administering the medical treatment provided to plaintiff. Therefore, plaintiff must show a causal connection to his constitutional deprivation through other means.  A plaintiff can do this by demonstrating either that "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or that "a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not allege a custom or policy was the moving force behind the alleged constitutional violation or that defendant Hemphill instructed or knew his subordinates would act unlawfully.  Furthermore, there is nothing in the record to suggest that there was a history of inmates receiving alternate medication without their consent which would have put defendant Hemphill on notice of the need to correct such conduct.

Instead, plaintiff's allegations appear to attribute liability to defendant Hemphill based on his responses to the inmate grievances plaintiff filed concerning the change in his medication. Although plaintiff attempts to attribute liability to defendant Hemphill based on his responses to his inmate grievances, the Amended Complaint fails to include factual allegations showing that defendant Hemphill had knowledge of a risk of serious harm and disregarded that risk by his responses to his inmate grievances. Thomas v. Poveda, 518 F. App'x 614, 618 (11th Cir. 2013) (citing Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).

Denying plaintiff's grievances does not amount to a constitutional violation. "[F]iling a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied." Hall v. Santa Rosa C.I., No. 3:06-cv-351/RV/EMT, 2007 WL 4674370, *5 (N.D. Fla. Feb. 2007) (quotations omitted); Richards v. Hemphill, No. 2:07-CV-762-FTM-29DNF, 2009 WL 1651390, at *6 (M.D. Fla. June 12, 2009). Therefore, defendant Hemphill is entitled to summary judgment on plaintiff's Eighth Amendment claim against him.

### 3. Defendant Moon

Plaintiff alleges defendant Moon was deliberately indifferent to his responsibilities to direct administrative activities of the

health services departments. (Doc. #12, p. 19.) Plaintiff asserts it is defendant Moon's responsibility to develop and/or maintain a record system for the credentials and job descriptions for each healthcare provided at the institution and to ensure staff receive appropriate orientation and training. (Id.) Plaintiff contends defendant Moon failed in his responsibilities because the health care providers were not properly trained and disciplined as evidenced by the lack of consent form in plaintiff's chart before dispensing the improper medication to plaintiff. (Id. at p. 20.)

Defendants assert there is no history of widespread prescription or dispensation of medication without informed consent that put defendant Moon on notice of the need to correct the alleged deprivation. (Doc. #65, p. 13.) Defendants argue there is no custom or policy that requires employees to order, prescribe, or dispense medication without obtaining informed consent. (Id.)

Liability may exist under § 1983 if an employee has not been adequately trained and a constitutional wrong is caused by that failure to train. Canton v. Harris, 489 U.S. 378, 387 (1989); Gilmere v. Atlanta, 774 F.2d 1495, 1503–1504 (11th Cir. 1985). In such a case, the liability is not based on *respondeat superior* but because the supervisor's own actions or inactions caused the harm. The failure to train must, in some relevant respect, evidence "a 'deliberate indifference' to the rights of" citizens. Sewell v.

Town of Lake Hamilton, 117 F.3d 488, 489-90 (11th Cir. 1997) (quoting Canton, 489 U.S. at 389); Gold v. Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

A claim concerning an isolated incident is generally insufficient to sustain a claim for failure to train because those officials who are responsible for creating a policy must be on notice of the constitutional deficiencies.  In Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990), the Eleventh Circuit held a sheriff's department could not be liable for the actions of a deputy unless there was evidence "of a history of widespread prior abuse" such that the sheriff was "on notice of the need for improved training or supervision."  919 F.2d at 674.  See also Church v. Huntsville, 30 F.3d 1332, 1342-46 (11th Cir. 1994) (holding plaintiff's claims could not succeed without proof that the City had knowledge of prior incidents); Popham v. Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train).  As a corollary, evidence that a policy or procedure was not followed by an employee is insufficient to establish liability against the supervisory official.  McCurry v. Moore, 242 F. Supp. 2d 1167, 1177 (N.D. Fla. 2002).

In this case, plaintiff claims that Dr. Kamnik altered his medication without his consent and a nurse distributed the medication to plaintiff.  There is no evidence of a policy or

custom of prescribing and distributing medication without an inmate's consent. To the contrary, plaintiff provides a copy of a policy that states the administration of psychotropic medication by a physician without an inmate's informed consent is restricted to emergency situations. (Doc. #73-4, p. 14.) Nothing in the record suggests defendant Moon was on notice the policy was not being followed or of the need to improve training or supervision of the health care providers. The record shows plaintiff's claims arise out of an isolated incident. There are insufficient facts showing defendant Moon was accountable for the alleged error in administering plaintiff's medication. Therefore, defendant Moon is entitled to judgment as to plaintiff's claims against him.

**B. Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment prevents the states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Two types of claims can arise under the Due Process Clause— substantive or procedural due process claims. Zinermon v. Burch, 494 U.S. 113, 125 (1990). Substantive due process protects fundamental rights from "certain government actions regardless of the fairness of the procedures used to implement them." Cty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Fundamental rights include most of the rights specified in the Bill of Rights, and any right

that is "implicit in the concept of ordered liberty." McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).   Procedural due process, on the other hand, refers to the existence of adequate constitutional procedures in depriving a person of their life, liberty, or property.   Id. at 1561.

### 1.  Substantive Due Process

Plaintiff has asserted violations of his substantive due process rights under the Fourteenth Amendment.   However, substantive due process claims are very limited in nature.   "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225-226 (1985)).   Consequently, the scope of substantive due process claims has been limited to areas relating to family, procreation, marriage, and bodily integrity.   Albright v. Oliver, 510 U.S. 266, 271-72 (1994) (plurality opinion).   Instead of relying on substantive due process to restrict the exercise of the government's arbitrary authority in particular situations, courts are to look to the protections granted in the first Ten Amendments of the Constitution.   Id. at 273.   If a particular Amendment provides protection from an alleged violation of a constitutional

right, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

Plaintiff asserts defendants violated his Fourteenth Amendment right to bodily integrity. (Doc. #12, p. 5.) However, plaintiff has not alleged or shown how his substantive due process rights are different from his Eighth Amendment rights in these circumstances. Therefore, the guide for analyzing plaintiff's claim must be the Eighth Amendment, not the "generalized notion of substantive due process[.]" Albright, 510 U.S. at 271-72 (citation and internal quotation marks omitted). The Court finds plaintiff's Fourteenth Amendment claim is duplicative of plaintiff's Eighth Amended claim. Accordingly, defendants are entitled to summary judgment on plaintiff's substantive due process claim.

### 2. Procedural Due Process

To the extent plaintiff brings a procedural due process claim asserting that his prison grievances were not handled properly by prison officials, even if true, fails to state a stand-alone § 1983 claim. The Eleventh Circuit Court of Appeals has held: "We agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006); Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir.

2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").   Therefore, a prison official's failure to timely process a grievance form, investigate it, or otherwise respond to a grievance is not actionable under § 1983.   Accordingly, defendants alleged errors regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

Accordingly, it is now

**ORDERED:**

1.  Defendant, Wexford Health Source's Motion for Summary Judgment (Doc. #30) is **GRANTED.**

2.  Defendants, Dr. Robert Hemphill and Arthur Moon's, Motion for Summary Judgment (Doc. #65) is **GRANTED**.

3.  Plaintiff's Motion to Deny Defendants Motion for Summary Judgment and Grant the Plaintiff Summary Judgment (Doc. #73) is **DENIED**.

4.  Thomas Reid's Motion for Enlargement of Time (Doc. #74) is **DENIED as moot**.

5.   The Clerk shall defer the entry of final judgment pending the disposition of plaintiff's remaining claims.

**DONE** and **ORDERED** in Fort Myers, Florida this   22nd   day of March, 2016.

<br>

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-2
Copies: All Parties of Record